Alice Elizabeth **DANIELS** et al., Appellants,

v.

**SHELL OIL COMPANY**, Appellee.

No. 17341.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 13, 1972.

Rehearing Denied Nov. 3, 1972.

Garrett, Settle & Callaway, and Bill Waltrip, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, and Howard G. Barker, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is an appeal by the plaintiffs, Alice Elizabeth Daniels et al. (who were the surviving wife, child, and parents of David Lee Daniels, deceased) from a summary judgment rendered in favor of defendant, Shell Oil Company, to the effect that plaintiffs take nothing by their suit. The suit was for damages for the alleged wrongful death of David Lee Daniels. It was based on the theory that the death of David Lee Daniels was proximately caused by the negligence of Shell Oil Company.

The undisputed facts were as follows: Shell Oil Company owned the land on which was located the filling station premises that are involved in this suit; on August 11, 1969, Shell Oil Company entered into a written lease agreement by the terms of which it leased the entire filling station premises involved to Employers Overload Company, a corporation, from day to day with the agreement that the lease could be terminated by either party, by giving ten days' notice; under this lease arrangement Employers Overload Company had possession of the entire premises and ran the filling station in question from August 11, 1969 to February 11, 1970; one of the terms of the original written lease was that the filling station would be operated 24-hours a day, but two or three days before David Lee Daniels was killed Shell agreed that Employers Overload Company would no longer be required to operate the station as a 24-hour operation; the purpose of this lease was to keep a going filling station business on the premises while Shell searched for a dealer whom they would later train and turn the station over to; the deceased, David Lee Daniels, was an employee of Employers Overload Company and was not an employee of defendant, Shell Oil Company at the time in question and he had, at the time of his death, been so employed for around six months; Daniels had worked at this particular filling station as an employee of Employers Overload Company since about August 11, 1969; and on November 7, 1969, while he was on duty alone at this filling station as an attendant after midnight Daniels was stabbed while being robbed by several men and he died from the stab wounds; the lease agreement provided that the tenant was obligated to keep the premises in good repair and expressly provided that Shell would not have any right to direct or control the management or the operation of the business and that the lessee had control of those things; and although the agreement of the parties only authorized Employers Overload Company to incur the expense of a certain number of man-hours per week for attendants at the filling station, it was Employers Overload Company that had the right to determine how many attendants would be on duty to run the station at any given time of the day.

The negligent acts alleged to have been committed by defendant were:

A. In requiring the station to remain open during the early morning hours, or for a 24-hour period each day;

B. In requiring the station to have only one attendant during such late hours;

C. In failing to provide Daniels with adequate safeguards for his safety;

D. In failing to instruct Daniels as to proper safeguards for his safety during the late hours when he was alone;

E. In operating the station during the late hours with just one attendant;

F. In failing to warn Daniels of the dangers of working alone at night.

The sole point of error urged by appellants is to the effect that the trial court erred in granting the appellee's motion for summary judgment.

A number of cases condemn points of error in this form and hold that points of error so worded are so general that they do not meet the requirements of the rules re-

lating to briefing. See Rule 418 in Vol. 4, Vernon's Texas Rules of Civil Procedure and the cases listed under Note 25 under that Rule.

However, in view of the liberal rules relating to briefing, we will consider and discuss the grounds of the appeal, as we understand them, that are contained in the argument and authorities set out under appellants' point. Covington v. City of Denison, Tex.Civ.App., 369 S.W.2d 824 (Dallas Civ.App., 1963, no writ hist.), and Mooney Aircraft, Inc. v. Adams, Tex.Civ. App., 377 S.W.2d 123 (Dallas Civ.App., 1964, no writ hist.).

This is not a suit by the heirs of an employee against his employer for damages for the employee's death.

We hold that the evidence offered at the summary judgment hearing established as a matter of law that the legal relationship that existed at the time in question between Shell Oil Company and Employers Overload Company was that of landlord and tenant and that the deceased, Daniels, was the employee of Employers Overload Company and was not an employee of Shell Oil Company. See Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632 (1943).

And as we interpret their brief, the appellants admit that the facts proved at the summary judgment hearing establish the legal relationship between Shell Oil Company and Employers Overload Company to be that of landlord and tenant. Appellants also admit that on the occasion of his death Daniels was the employee of Employers Overload Company and was not an employee of Shell Oil Company.

Appellants' contention seems to be that, even though the facts just mentioned are true, the agreements between Shell Oil Company and Employers Overload Company gave Shell the right to require the deceased, Daniels, to work the hours after midnight by virtue of the original lease provision requiring the station to be oper-

ated on a 24-hour basis. Appellants also contend that such agreements provided that the tenant could only incur the expense of a limited number of man-hours per week for service station attendants, thus giving Shell the right to require that Daniels work alone during the early morning hours when he was killed.

Appellants' reasoning appears to be that even though Shell Oil Company was not the employer of Daniels, that the agreement between Shell Oil Company and Employers Overload Company did give to Shell the right to control Daniels in the two respects referred to and that because of that right of control Shell Oil Company owed to the employees of its tenant, Employers Overload Company, certain duties that it breached in the instances that are enumerated herein above and thereby proximately caused Daniels' death.

We overrule all of appellants' contentions.

Actually the appellants' contentions made on this appeal are disposed of by the fact that the undisputed evidence in the case shows that Shell Oil Company did not have the right to control Employers Overload Company or its employees in either of the two respects upon which they rely.

The record shows that although the original lease agreement did provide that the filling station would be a 24-hour operation, this provision was not in effect at the time Daniels was killed because the lessor and lessee had two or three days prior to Daniels' death mutually agreed that the station would no longer be required to be operated on a 24-hour basis.

The record also showed that although the agreement between lessor and lessee did limit the number of man-hours of expense that the tenant could incur for the hire of service station attendants, it was the tenant, Employers Overload Company, that had the right to determine how many service station attendants would be on duty at any given hour of the day.

But even if appellee did have the right of control in the two respects referred to we would still be required to affirm the trial court's judgment.

In the absence of an agreement by a landlord to make repairs during the term of the lease and in the absence of hidden defects of which the landlord was aware that existed at the time the premises were let, the tenant takes the risk of the safety of the leased premises, and the landlord is not liable to lessee or to lessee's employees for injuries that are caused by an unsafe condition of the premises. City of Fort Worth v. Barlow, Tex.Civ.App., 313 S.W. 2d 906 (Fort Worth Civ.App., 1958, ref., n. r. e.). The courts hold that an employee of the lessee in such a case stands in the shoes of the lessee and has no higher right. Medlin v. Havener, Tex.Civ.App., 98 S.W. 2d 863 (Fort Worth Civ.App., 1936, no writ hist.). On this see also Barber v. Continental Oil Company, 325 P.2d 949 (Okl.Sup.Ct., 1958) and Flynn v. Pan American Hotel Co., 143 Tex. 219, 183 S.W.2d 446 at page 449 (1944).

 The duties and liabilities of a landlord to an employee of the tenant with respect to personal injuries ordinarily are the same as those owed by the landlord to the tenant. 52 C.J.S. Landlord & Tenant, § 421, p. 144 and cases therein cited.

In instances where the entire premises have been let a landlord does not owe to either his tenant or to his tenant's employees a duty to protect them from robberies or from assaults committed by third parties over whom the landlord has no control even though the robbery or assault does occur upon the leased premises during the term of the lease.

We hold that Shell Oil Company, the landlord, did not, under the undisputed facts of this case, owe to its tenant's employee, Daniels, any of the duties that the appellants allege to have been breached by Shell Oil Company. In other words, Shell Oil Company, as a matter of law, was not guilty of negligence in the respects alleged by appellants in this case.

The trial court did not err in rendering the summary judgment in this case.

The judgment is affirmed.